UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------x
JOSE LARES, M.D.,

                       Plaintiff,

        - against -

WESTCHESTER MEDICAL CENTER,
WESTCHESTER COUNTY HEALTH CARE
CORPORATION and KATHRYN
McGOLDRICK, M.D.,

                      Defendants.
---------------------------------------------------------

05 Civ. 856 (CLB)

***Memorandum and Order***

Brieant, J.

      By motion filed on April 4, 2005 (Doc. #4), heard and fully submitted on May 27, 2005, Defendants Westchester Medical Center, Westchester County Health Care Corporation and Kathryn McGoldrick, M.D., move under Fed. R. Civ. P. 12(b)(1) and 12(b)(6) to dismiss Plaintiff Joseph Lares, M.D.'s Complaint. Opposition papers were filed on May 12, 2005. Plaintiff moved to amend his Complaint, and Defendants' motion is deemed as addressed to the Amended Complaint.

      The following well-pled facts appear in the Amended Complaint and other relevant documents incorporated therein, and are accepted as true for purposes of this motion only. Plaintiff was a resident physician in the Anesthesiology Department of the Westchester Medical Center, which is comprised of approximately fifty attending and resident physicians. He was employed pursuant to a work visa. Dr. McGoldrick was chairman of this Department, and Dr. Lares's direct supervisor. From July, 1999 until June 30, 2001, Plaintiff was employed by Our

Lady of Mercy Hospital as a resident physician in its Anesthesiology Department. He began working at Westchester Medical Center on or about July 1, 2001. This change was considered a promotion. At the Medical Center, Plaintiff was the only openly gay man, and claims to have been harassed physically and verbally because he was gay. In August, 2001, Plaintiff told Dr. McGoldrick that he was gay and was being harassed constantly by coworkers. Nothing was done to stop the harassment. In December, 2001, Plaintiff complained to Dr. McGoldrick that he had received a heavier schedule than other residents because of his complaints about sexual orientation discrimination and harassment, but nothing was done in response.

In March, 2002, Plaintiff told his supervisors that his boyfriend was HIV positive and had AIDS. Defendants did not ask Plaintiff if he was HIV positive. Plaintiff claims that the Defendants were subsequently unaccommodating to his requests, such as beginning work thirty minutes later to help his boyfriend with his medication, and not to work in the isolation ward because of his boyfriend's compromised immune system. Defendants suggested that Plaintiff put his boyfriend in a nursing home. Another resident physician refused to work with Plaintiff, and Plaintiff was asked to take extra precautions when dealing with blood and blood patients and to wear two pairs of surgical gloves while working on patients. Plaintiff claims that the Defendants insisted that he undergo HIV testing, which he did.

In approximately March, 2002, Plaintiff claims that he had observed medical malpractice and falsification of medical documents at the Medical Center, which resulted in patients' deaths. Plaintiff was required to report these deaths to the Defendants' Morbidity Conference, but one

patient's chart could not be located to do so. Plaintiff reported one such death to Dr. McGoldrick, who ordered Plaintiff not to speak about the death. In October 2002, Plaintiff complained to Dr. McGoldrick that he had not received any requested elective rotation, and had instead been assigned the most exhausting possible routines. He complained that this was in retaliation for his various complaints.

Notwithstanding all of this allegedly malicious conduct, in April, 2003, Defendants extended Plaintiff's employment contract term six weeks beyond its June 30, 2003 scheduled termination date, so that he could complete his residency. In early May, 2003, Plaintiff received an employment contract from the Medical Center, which extended an offer of employment from July 1, 2003 until September 19, 2003. This offer was based largely on Dr. McGoldrick's positive recommendation. Plaintiff accepted this offer on May 14, 2003. As of June 30, 2003, Plaintiff had fulfilled all the Defendants' residency requirements, and had complied fully with all standard requirements to obtain Board certification. However, Plaintiff's work visa expired on or about June 30, 2003. Defendants appropriately instructed him to resign, promising him that he could return to work and complete his contract term once his work permit was renewed. He resigned on or about July 2, 2003, but did not obtain a new work permit until September 26, 2003. Plaintiff was not allowed to return to work.

Plaintiff claims that Defendants told him to stop contacting them, and that Dr. McGoldrick ordered program coordinator Betty Ven Vield to change Plaintiff's grade from "pass" to "fail," and stated that she would rather "lose my position than sign [Plaintiff's]

degree." Plaintiff's employment with Defendants ended 26 days prior to his completing his four-year residency. In March, 2004, Plaintiff went in person to request a copy of his personnel file, and Dr. McGoldrick ordered security to escort him out of the building. In September 2004, the Committee of Interns & Residents determined that the Defendants owed Plaintiff compensation for 35 accumulated holidays and vacation, which Defendants have failed to pay.

On June 1, 2004, Plaintiff filed a charge of discrimination with the New York State Division of Human Rights ("Division") and the EEOC. The Division dismissed the charge for administrative convenience on September 17, 2004, and the EEOC issued a right to sue letter on November 5, 2004. Plaintiff filed his Complaint in this Court on January 25, 2005. He is seeking relief under the Americans with Disabilities Act ("ADA") and New York State Human Rights Law ("NYSHRL") for disability discrimination, sexual orientation discrimination and hostile work environment. He also alleged claims for breach of contract and whistle-blower violations under the New York Civil Service Law. The Defendants have not moved as to the Plaintiff's ADA claims against the County Defendants.

So much of this motion as is founded on Rule 12(b)(1) is frivolous and is denied.

In considering a motion to dismiss under Rule 12(b)(6), the Court must accept the well-pleaded assertions of fact in the Complaint as true and to draw all reasonable inference and resolve doubts in the Plaintiff's favor. *See Kaluczky v. City of White Plains*, 57 F.3d 202, 206 (2nd Cir. 1995). The focus of the Court's inquiry is not whether the Plaintiff will prevail

ultimately, but whether the Plaintiff is entitled to offer evidence in support of his claims. Therefore a motion to dismiss must be denied unless it appears beyond doubt that the Plaintiff can prove no set of facts in support of his claims which would entitle him to relief. *See Conley v. Gibson,* 355 U.S. 41, 45-46 (1957).

Although the Defendants have not moved to dismiss Plaintiff's ADA claims brought against the County Defendants, no conduct which occurred prior to March, 2002 can be used by Plaintiff to support these allegations. March of 2002 is when the Plaintiff first told Defendants about his boyfriend's HIV status. Prior to that date, no factual basis exists to consider the Plaintiff as "disabled" because the Defendants were not yet aware that Plaintiff's boyfriend had AIDS.[1] During oral argument, counsel for the Plaintiff conceded that personal liability of a non-employer does not exist under the ADA, and the Court dismisses all ADA claims against Dr. McGoldrick. Further, Defendants' refusal to accommodate Plaintiff does not relate to Plaintiff's ADA claims insofar as these accommodations were requested for Plaintiff's boyfriend's benefit.

The allegations in the Complaint do not support a claim for constructive discharge as a matter of law. A constructive discharge occurs when an employer intentionally creates an intolerable working environment that forces the employee to quit involuntarily. "Intolerable"

---

[1] Plaintiff takes issue with comments and remarks made by his co-resident physicians. The ADA addresses only actions performed by "covered entities," including employers. Third-party co-employees are not employers. Also, these comments would not constitute adverse employment actions as a matter of law. The Defendants have not moved as to Plaintiff's ADA claims against the County Defendants, and the Court takes no position on whether that portion of the Complaint states valid claims.

means that the working conditions are "so difficult and unpleasant that a reasonable person in the employee's shoes would have felt compelled to resign." *See Pa. State Police v. Sunders,* 542 U.S. 129 (2004); *Chertkova v. Conn. Gen. Life Ins. Co.,* 92 F.3d 81, 89 (2nd Cir. 1996). Plaintiff could not work lawfully after June 30, 2003, and in any event, he does not allege that he resigned because of "intolerable" working conditions. On the facts pled, Plaintiff cannot recover for constructive discharge.

Defendants argue that Plaintiff did not file a Notice of Claim for his state law claims. A Notice of Claim is not required when the Plaintiff pursues administrative remedies prior to filing suit. *See Freudenthal v. County of Nassau*, 99 N.Y.2d 285, 292 (2003). A Notice of Claim filed subsequent to administrative proceedings would serve no purpose, and in any event it could not be filed within ninety days of the alleged occurrences. The Defendants received clear and adequate notice during the Division administrative proceedings. Division proceedings often take more than one year, and no reason exists to require the Plaintiff to file a notice of claim years into a dispute.

Defendants argue that Plaintiff's State claims are untimely. Plaintiff's State claims against these Defendants are governed by N.Y. Pub. Auth. L. § 3316(1), which provides that "an action or special proceeding. . .against [the Medical Center]. . .shall be commenced within one year and ninety days [of the alleged occurrence]." This provision applies to a broader range of claims than N.Y. Gen. Mun. L. § 50, which applies only to tort actions. Plaintiff filed his Complaint in this Court on January 25, 2005. The latest date on which Plaintiff's claims could

have accrued is September 26, 2003, when he was told that his contract would not be renewed. His claims are therefore untimely unless tolling applies.

The Division dismissed his discrimination claims for "administrative convenience," because "[Plaintiff] has decided to pursue litigation in Federal Court." Plaintiff has an absolute right to pursue a properly filed federal lawsuit upon complying with his EEOC filing obligations because the federal and state remedies are not mutually exclusive. *See Oscar Mayer & Co. v. Evans,* 441 U.S. 750, 764 (1979). The Division annuls complaints regularly to permit a plaintiff to consolidate and pursue all claims in a federal forum. *See Universal Packaging Corp. v. N.Y. State Div. of Human Resources*, 270 A.D.2d 586, 588 (3d Dep't 2000). This situation is different from *Henderson v. Town of Van Buren*, 15 A.D.3d 980 (4th Dep't 2005) and *Legg v. Eastman Kodak Co.,* 248 A.D.2d 936 (4th Dep't 1986), in which the plaintiff wanted to annul a Division complaint to pursue litigation in State court, and in *Legg*, had in fact filed the State claim prior to requesting annulment. Such conduct contravenes State law election of remedies. Because the Plaintiff may pursue his federal claims in this Court, consolidating state claims serves the public interest in conserving judicial resources. Plaintiff's discrimination claims were tolled while his claim was before the Division, and accordingly they were timely when he filed his Complaint in this Court.

The Defendants assert, and the Court agrees, that the Plaintiff has not stated a claim for breach of contract. He alleges that his contractual term was from July 1, 2003 until September 19, 2003. He alleges that Dr. McGoldrick told him to resign, because he then had no work visa,

and then return to finish his contract term when he had done so. Plaintiff was obviously not permitted to work while his work visa was expired, and by the time that his visa was renewed on September 26, his contract term had already expired. The Defendants were under no obligation to extend his contract beyond September 19, 2003, and their refusal to do so cannot form the basis for a breach of contract claim.

Plaintiff argues that his whistle blower claim's limitation period was tolled while his discrimination claims were before the Division and EEOC. He cites only *Le Prevost v. New York State,* 2004 U.S. Dist. LEXIS 58 (S.D.N.Y. 2004) (Motley, J.) and *Brown v. Bronx Cross County Medical Group,* 834 F. Supp. 105 (S.D.N.Y. 1993) (Edelstein, J.), non-precedential cases, for support. In any event, Plaintiff's whistle blower claim does not rely upon the same facts as his discrimination claims. His whistle blower claim arises factually only from his reporting alleged medical malpractice, and not from sexual orientation discrimination. The two claims are not related in any way. The whistle blower claim is therefore not entitled to tolling, and is dismissed as time-barred.

## Conclusion

Defendants' motion to dismiss Plaintiff's Amended Complaint is granted as to the Plaintiff's breach of contract and whistle blower claims. Plaintiff's ADA claims against Dr. McGoldrick are dismissed. The Court declines at this time to make the findings contemplated by Fed. R. Civ. P. 54(b). The parties shall attend a status conference before the Court on July 22, 2005 at 9:00 A.M.

SO ORDERED.

Dated: White Plains, New York
May 31, 2005

                                        /s/ Charles L. Brieant
                                        Charles L. Brieant, U.S.D.J.